# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

ADRIAN A. ALLEN, )
#244358, )
 ) CIVIL ACTION NO. 9:14-1547-BHH-BM
   Petitioner, )
 )
v. ) **REPORT AND RECOMMENDATION**
 )
JOSEPH MCFADDEN, WARDEN, )
 )
   Respondent. )
_____)

   Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ

of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed pro se on April 15, 2014.[1]

   The Respondent filed a return and motion for summary judgment on September 5,

2014. As the Petitioner is proceeding pro se, a Roseboro order was filed on September 9, 2014,

advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the

motion for summary judgment. Petitioner was specifically advised that if he failed to respond

adequately, the motion for summary judgment may be granted, thereby ending his case. After

receiving an extension of time, Petitioner filed a response in opposition on December 17, 2014, and

a supplement on January 14, 2015.

   This matter is now before the Court for disposition.[2]

---

  [1]Filing date per Houston v. Lack, 487 U.S. 266, 270-276 (1988).

  [2]This case was automatically referred to the undersigned United States Magistrate Judge for
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and
(continued...)



1

**Procedural History**

Petitioner was indicted in Beaufort County in December 2004 for murder and possession of a weapon during a violent crime [Indictment Nos. 04-GS-07-1963 & 1921]. (R.pp. 301-304). Petitioner was charged with shooting and killing Myron Quinn Allen. Petitioner was represented by Gene Hood, Esquire, and after a trial by jury on July 18-19, 2005, was convicted on both charges. (R.pp. 1-160). The trial judge sentenced Petitioner to thirty-two (32) years confinement in prison for the murder conviction, and five (5) years, consecutive, for the weapons conviction. (R.pp. 168-170). Petitioner filed a motion for a new trial, but after a hearing on August 12, 2005, the motion was denied. (R.pp. 174-179).

Petitioner then filed a timely direct appeal. Petitioner was represented on appeal by Joseph Savitz, III, of the South Carolina Office of Appellate Defense, who filed an <u>Anders</u>[3] brief seeking to be relieved as counsel and raising the following issue:

> The trial judge committed reversible error by refusing to instruct the jury on voluntary manslaughter.

<u>See</u> Petition, p. 3 (Court Docket No. 26-3, p. 4).

Petitioner himself also filed a <u>pro se</u> response to the <u>Anders</u> brief, in which he raised the following issues:

---

(...continued)
> Local Rule 73.02(B)(2)(c)and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]<u>Anders v. California</u>, 386 U.S. 738 (1967). <u>Anders</u> requires that appointed counsel who seeks to withdraw because no nonfrivolous issues exist for review must submit a brief referencing anything in the record that arguably could support an appeal; a copy of that brief must be furnished to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct an independent and complete examination of the proceedings to determine if further review is merited. <u>See</u> <u>Anders</u>, 386 U.S. at 744.

2



1. Whether the S.C. Court of Appeals has subject matter jurisdiction to entertain and adjudicate appellant's appeal, when there was no written order adjudicating his post-trial motion for a new trial?

2. Whether the trial court committed constitutional error by failing to instruct the jury on the law as to what reasonable doubt is as a matter of law?

3. Whether the trial court committed constitutional error when it sentenced appellant to 32 years of imprisonment for the crime of murder?

4. Whether the trial court committed constitutional error when it refused to charge the jury on the law for voluntary manslaughter as a lessor included offense for the offense of murder?

5. Whether the trial court committed constitutional error when it denied appellant's motion for a direct verdict when the jury had to speculate and use conjecture as to appellant's guilt?

6. Whether the trial court committed constitutional error when it denied appellant's motion for a new trial where the prosecution failed on its burden of production on every element of the crimes in question?

7. Whether the trial court committed constitutional error in instructing the jury on malice, where the instruction shifted the burden to the appellant?

See Petition, p. iv (Court Docket No. 26-4, p. 5).

The South Carolina Court of Appeals denied Petitioner's direct appeal on September 10, 2008. See Allen v. State, Appellate Case No. 2008-UP-526 (Order filed September 10, 2008); Court Docket No. 26-5. The South Carolina Court of Appeals also considered and denied Petitioner's petition for rehearing on October 28, 2008. See Court Docket Nos. 26-6 and 26-7. On that same date, the South Carolina Court of Appeals carefully considered and denied Petitioner's petition for rehearing En Banc. See Court Docket No. 26-8. Petitioner then filed a Petition for Certiorari to the South Carolina Supreme Court, and on February 27, 2009, the South Carolina Supreme Court dismissed the matter pursuant to State v. Lyles, 673 S.E.2d 811, 813 (S.C. 2009), wherein the Court held that it would "no longer entertain petitions for writs of certiorari where the Court of Appeals has



3

dismissed an appeal after conducting an <u>Anders</u> review." <u>See</u> Court Docket Nos. 26-9 and 26-10.

The South Carolina Supreme Court denied Petitioner's petition for rehearing and rehearing En Banc

on April 10, 2009. <u>See</u> Court Docket Nos. 26-11 and 26-12.

On January 28, 2010, Petitioner filed an application for post-conviction relief

("APCR") in state circuit court; <u>Allen v. State of South Carolina</u>, No. 2010-CP-07-388; which he

amended several times, ultimately raising the following issues:

Ineffective Assistance of Counsel

a.    Failure to Object to Court's jury Instruction on Reasonable Doubt where "Reasonable Doubt" was not defined.

b.    Failure to Object to an Improper Sentence; and

c.    Failure to Object to an Erroneous Jury Instruction on the Inference of Malice from the use of a deadly weapon.

(R.pp. 180–193, 198-201, 213-215, 227-228). <u>See also</u> (R.pp. 275, 277, 279).

Petitioner was represented in his APCR by Dustin Lee, Esquire, and an evidentiary hearing was held

on Petitioner's application on April 3, 2012. (R.pp. 241-272). In an order filed May 31, 2012 (dated

May 8, 2012), the PCR judge denied relief on the APCR in its entirety. (R.pp. 273-282). Petitioner

filed a motion to alter or amend judgment, following which the PCR court filed an Amended Order

of Dismissal on July 2, 2012 (dated June 27, 2012). (R.pp. 283-300).

Petitioner then filed a timely appeal of the PCR court's order. Petitioner was

represented on appeal by David Alexander, Esquire, of the South Carolina Office of Appellate

Defense, who filed a <u>Johnson</u>[4] petition seeking to be relieved and raising the following issue:

Whether trial counsel was ineffective in derogation of Petitioner's Sixth Amendment

---

[4]<u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1998); <u>see also</u> <u>Anders</u>, 386 U.S. at 744.



rights by failing to object when the trial court did not define "reasonable doubt" in its jury charge?

<u>See</u> Johnson Petition, p. 2 (Court Docket No. 26-14, p. 3).

Petitioner then filed a <u>pro se</u> brief raising the following additional issue:

Was counsel ineffective for failing to object to the court's failure to notify petitioner of scheduled Blair hearing and provide the petitioner with a copy of the report?

<u>See</u> Petition, p. 2 (Court Docket No. 25-3).

On February 26, 2014, the South Carolina Court of Appeals denied Petitioner's writ of certiorari and granted counsel's petition to be relieved. <u>See</u> Court Docket No. 26-16. The Remittitur was sent down on March 14, 2014. <u>See</u> Court Docket No. 26-17.

    In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issues:

**Ground One:** Trial counsel failed to object to the trial judge's failure to give a definition of reasonable doubt in jury charge.

**Supporting Facts:** During the jury charge stage, trial counsel did not object to the faulty jury charge, where the trial judge failed to include the definition for reasonable doubt. This definition was essential where the court charged that use of a deadly weapon to accomplish the crime implied or inferred that guilt was automatic. This caused a shift in the burden of proof upon the defendant to prove his innocence. Such error prejudices Petitioner's ability to the most minimum of due process in these matters. Trial counsel was asked at the PCR proceedings . . . (See Addendum Sheet, page 6, Ground One (continued)[5].

**Ground Two:** Trial counsel prejudiced Petitioner's trial by not securing an expert witness in GSR to assist the jurors in comprehending the evidence or lack thereof.

**Supporting Facts:** During the course of trial the Respondent's offered expert testimony as to purported Gun Shot Residue (GSR). Such testimony included the areas which were examined and tested for the GSR. These would include the living

---

[5]The Court has not included the additional facts on the Petitioner's attachment that support this same ground.



room, carpets, blue chair, victim, Petitioner, the interior of the mobile home.  The explanation provided . . . (See Addendum Sheet, Page 7, Ground Two: (continued)).[6]

**Ground Three:** Trial counsel failed to object to the introduction to the jury of a firearm that was displayed but not admitted into evidence nor established as to its relevancy.

**Supporting Facts:** The prosecutor displayed a firearm that had no relevan[ce] to this case, nor had it been introduced and admitted into evidence.  This introduction was done while the jury was entertaining testimony and evidence, but exists no where within the records, exhibits, or transcript.  This is a direct violation to criminal protocol, violates the Rules of Evidence, and raises a claim of an invidiously discriminatory act or practice.  This conduct has severely prejudiced this Petitioner's opportunity in which to receive a fair and just end.  During the course of the trial, the prosecutor . . . . (See Addendum Sheet, Page 9, Ground Three: (continued)).[7]

**Ground Four:** Trial counsel failed to object to the introduction of a bullet which had been removed from the victim without ballistic confirmation or testing.

**Supporting Facts:** During this course of the trial the Respondents introduced a bullet which was removed from the victim's body that was alleged to have been the bullet that killed hi[m].  Such was done without benefit of object by counsel, because the bullet had never been identified from what firearm or weapon it had been fired.  In fact, all the firearms collected relating to any issue of this case, no where is there any form of ballistic report or testing that would match the bullet with the caliber of weapon it was fired from.  Trial counsel failed to obtain an expert in ballistics to test and offer expert insight as to whether the bullet alleged to have killed the victim, was in fact, associated to any firearm collected after the crime had occurred.  Especially where. . . . . (See Addendum Sheet, Page (12), Ground Four: (continued)).[8]

<u>See</u> <u>Petition</u>, pp. 6-7, 9, 11.

## <u>Discussion</u>

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[6]<u>See</u> footnote 5, <u>supra</u>.

[7]<u>See</u> footnote 5, <u>supra</u>.

[8]<u>See</u> footnote 5, <u>supra</u>.



genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Rule 56, Fed.R.Civ.P; <u>see</u> Habeas Corpus Rules 5-7, 11.  Further, while the federal court is charged with liberally construing  pleadings filed by a <u>pro</u> <u>se</u> litigant to allow the development of a potentially meritorious case; <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

## I.

### (Ground One)

In Ground One of his Petition, Petitioner argues that his trial counsel was ineffective when he failed to object to the trial judge's failure to give a definition of reasonable doubt in the jury charge.  As part of this Ground, Petitioner also raises the issue of the malice charge, citing to <u>State v. Belcher</u>, 685 S.E.2d 802 (S.C. 2009).[9]  Petitioner raised both of these issues in his APCR, where Petitioner had the burden of proving the allegations in his petition.[10]  Counsel also raised the claim relating to the reasonable doubt charge in the PCR appeal to the State Court of Appeals.[11]  <u>Butler v.</u>

_____

[9]<u>Belcher</u> held that a jury charge instructing that malice may be inferred from the use of a deadly weapon was no longer good law in South Carolina where evidence is presented that would reduce, mitigate, excuse or justify the homicide.  <u>Belcher</u>, 685 S.E.2d at 804.

[10]Although Petitioner's claim of ineffective of assistance of counsel for failing to object to the malice charge was addressed as a separate issue in his PCR proceeding, Petitioner combines that argument here with his allegations relating to ineffective assistance of counsel due to failure to object to the reasonable doubt charge.

[11]Although Petitioner did not specifically raise in his PCR appeal the issue of ineffective assistance of counsel relating to the malice charge under <u>Belcher</u>, that issue is nonetheless exhausted
(continued...)



<u>State</u>, 334 S.E.2d 813, 814 (S.C. 1985), <u>cert.</u> <u>denied</u>, 474 U.S. 1094 (1986); <u>see</u> <u>also</u> Court Docket No. 26-14.  The PCR court rejected these claims, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. <u>See</u> <u>Allen  v. State of South Carolina</u>, No. 2010-CP-07-388.

Specifically, the PCR judge found that: 1) Petitioner's trial counsel, the current elected Public Defender for the Fourteenth Circuit, was an Assistant Public Defender at the time of Petitioner's trial; 2) trial counsel testified that he had conducted roughly one hundred murder trials prior to representing Petitioner in 2005, including several trials before Judge Jackson Gregory, Petitioner's trial judge; 3) counsel stated because of his familiarity with Judge Gregory and his jury instructions, he did not prepare any proposed jury instructions to be considered by the court; 4) counsel went on to say that, in his experience, Judge Gregory's jury charges came "right from the [Bench] Book", and he even had the opportunity to review the charges to be given with the judge and opposing counsel in chambers prior to their reading in court; 5) counsel stated he did not believe he objected to any portion of the jury charges given at trial, and the record before the Court reflected the same; 6) counsel conceded that he did not see any definition of "reasonable doubt" given in the jury charge nor did he object to the court's failure to charge such; 7) based upon the testimony presented and a thorough review of the record, the PCR court found that Petitioner's claim was without merit in this regard as counsel was not deficient in failing to pose such an objection, nor did Petitioner suffer any prejudice as a result of the alleged deficiency; 8) Petitioner's claim that the jury charge

---

[11](...continued)
for purposes of federal review since a <u>Johnson</u> petition was filed and the state Appellate court would therefore have reviewed the entire PCR record.



failed to comply with the requirements set forth in <u>State v. Manning</u>, 409 S.E.2d 372 (S.C. 1991)[12]

was unfounded and the charge was supported by the case law; 9) in <u>State v. Johnson</u>, 445 S.E.2d 637,

the Supreme Court of South Carolina commented on the so-called "<u>Manning</u> charge", saying the

reasonable doubt charge set forth in <u>Manning</u> was not intended to be mandatory and the Court even

went on to say "the phrase 'beyond a reasonable doubt' without an explanation . . . is much more

favorable to a defendant than when amplified by an explanation" 445 S.E.2d at 637; 10) the Court

in <u>Johnson</u> ultimately held no error existed where the trial judge failed to give a definition of

reasonable doubt; 11) the Supreme Court of the United States similarly held that a definition of

reasonable doubt is not Constitutionally imposed, opining: "[S]o long as the court instructs the jury

on the necessity that a defendant's guilt be proved beyond a reasonable doubt, the Constitution does

not require that any particular form of words be used in advising the jury of the government's burden

of proof." <u>Victor v. Nebraska</u>, 511 U.S. 1 (1994); 12) in reviewing the record, it appeared the State's

burden of proof beyond a reasonable doubt was directly stated by the trial judge numerous times

throughout his instructions to the jury, in addition to both attorneys mentioning that burden in

opening and closing arguments; 13) counsel was not deficient; 14) there was find no resulting

prejudice as counsel's objection, if contemporaneously made, would likely have been overruled based

on the standards set forth above; 15) even if the trial court had sustained the objection and imposed

a charge defining reasonable doubt, the PCR Court did not find any probability that the outcome of

the trial would have been any different based on the testimony and evidence presented at trial; 16)

---

[12]<u>State v. Manning</u> suggested that the trial bench give no further definition of reasonable doubt
than that "a reasonable doubt is the kind of doubt that would cause a reasonable person to hesitate
to act", although the Court did not mandate that charge.  <u>Manning</u>, 409 S.E.2d 372; <u>see also</u> <u>State v
Johnson</u>, 445 S.E.2d 637-638 (S.C. 1994).



counsel was not ineffective in his representation in this regard; 17) regarding the specific malice instruction given, counsel noted that malice itself is an element of murder to always be charged as part of the crime, but the inference of malice based on the use of a deadly weapon charge set forth in State v. Elmore, 308 S.E.2d 781 (S.C. 1983), had since been overturned by the ruling set forth in State v. Belcher; 18) counsel stated that he and Petitioner had discussed presenting a self-defense theory at trial, but he was unable to uncover and present sufficient facts to support such a defense and, therefore was ultimately forced to abandon it; 19) counsel said that he did not believe there was any reason to object to the inference of malice jury charge as this case was tried well before the decision in Belcher and there was no evidence that could be offered by Petitioner to mitigate, excuse or justify the killing; 20) based on a thorough review of the record and the testimony presented, counsel's performance was not deficient where he failed to pose an objection to the jury instruction on permissive inference of malice arising from the use of a deadly weapon; 21) in general, the trial court is only required to charge the current and correct law of the State; 22) the law to be charged to the jury must be determined by the evidence presented at trial; 23) the substance of the law is what must be instructed to the jury, not any particular verbiage; 24) the charge given by the trial judge was appropriate and in accordance with the relevant law at the time, and therefore, was not objectionable; 25) in fact, the language used in the charge was taken directly from the judge's "Bench Book" which is regularly used in charging juries across the State on the law to be applied in both civil and criminal cases; 26) Petitioner's contention that the charge given "constituted a mandatory presumption" of malice rather than a permissive presumption is without merit, as the language used by the judge clearly conveyed that the jury "may" presume such malice; 27) counsel exercised reasonable judgment based on professional norms in not objecting to the charge as given; 28) Petitioner failed

10



to prove how counsel's failure to object to the jury charge given on the permissive inference of malice resulted in prejudice in this case; 29) had counsel made such an objection, the trial court would have overruled the objection and allowed the jury to continue to operate under the law as charged since it was a complete and accurate statement of the law regarding the permissive inference at the time; 30) while Belcher set forth a dramatic change in precedent in finding that a jury instruction on the permissive inference of malice from the use of a deadly weapon should not be given by a trial court where evidence is presented that would reduce, mitigate, excuse or justify the killing, Belcher was not decided until roughly three and a half years after Petitioner's trial, and eight months after Petitioner's direct appeal was dismissed; 31) of little consequence to this decision is the application of Belcher which the PCR Court found would not have made a difference to the outcome of Petitioner's trial even had it applied; 32) there was no evidence presented at trial that would reduce, mitigate, excuse, or justify Petitioner's killing of the victim as required to invoke Belcher; 33) additionally, the Court in Belcher specifically noted that the ruling would not apply to convictions challenged on post-conviction relief; 34) therefore, even taking Petitioner's argument on its face and applying Belcher (which clearly did not apply), the allegation was without merit; 35) no resulting prejudice stemmed from counsel's failure to object to the jury charge as given; 36) neither deficiency nor resulting prejudice was shown; and 37) Petitioner failed to carry his burden. (R.pp. 275-277, 279-281). The PCR court reiterated these findings in its Amended Order of Dismissal denying Petitioner's motion to reconsider; (R.pp. 289-291, 293-295); and the South Carolina Court of Appeals denied Petitioner's PCR appeal wherein his counsel presented these issues via a Johnson brief. See Allen v. State, Appellate Case No. 2012-212608 (Order filed February 26, 2014); Court Docket No. 26-16.



Substantial deference is to be given to the state court's findings of fact.  Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)).  Nevertheless, with regard to the ineffective assistance of counsel claim that was adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 529 U.S. 362 (2000).  See Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that

12



was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"].  Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694.  In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective.  First, the Petitioner must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment.  Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial.  In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir.1996).  For the reasons set forth and discussed hereinbelow, Petitioner has failed to meet his burden of showing that his counsel was ineffective under this standard.  Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975)[Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

With respect to Petitioner's contention that his counsel was ineffective for failing to object to the trial court's failure to give a definition of reasonable doubt in the jury charge, the Fourth Circuit has held that,

> Although due process requires that the government prove each element of an offense beyond a reasonable doubt, the Constitution neither requires that trial courts define reasonable doubt nor prohibits them from doing so. And, when a trial court elects to define reasonable doubt, the Constitution does not mandate a particular definition.

13



> Rather, the question is whether the instruction, taken as a whole, correctly conveyed the concept of reasonable doubt to the jury.

<u>Baker v. Corcoran</u>, 220 F.3d 276, 292 (4th Cir.2000) (citations omitted).

Here, the trial judge directly referred the jury several times to the issue of reasonable doubt in his instructions, that the Defendant had a presumption of innocence, and that in order to convict they must be satisfied from the evidence of the Defendant's guilt beyond a reasonable doubt. (R.pp. 149-151, 154). The State and Petitioner's counsel also argued reasonable doubt in their closing arguments. (R.pp. 145, 149). Based upon the jury instruction on reasonable doubt, the charges as a whole, and the applicable law, the jury instruction taken as a whole correctly conveyed the concept of reasonable doubt to the jury. Hence, the trial court's failure to give a separate definition of reasonable doubt in the jury charge does not entitle Petitioner to relief. <u>Baker</u>, 220 F.3d at 292; <u>see also</u> <u>Victor v. Nebraska</u>, 511 U.S. 1, 5 (1994) ["[S]o long as the court instructs the jury on the necessity that a defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof"]. This issue is without merit and should be dismissed.

Petitioner also asserts that his trial counsel erred in failing to object to the court's jury charge on the inference of malice from use of a deadly weapon. The Court charged the jury as follows:

> Malice may be inferred from conduct showing a total disregard for human life. Inferred malice may also arise when the deed is done with a deadly weapon. A deadly weapon is any article, instrument or substance which is likely to cause death or great bodily harm. Whether an instrument has been used as a deadly weapon depends upon the facts and circumstances of each case. The following are examples of instruments which may be a deadly weapon[], a pistol, a shotgun, a rifle, a dagger, a knife, a slingshot, metal knuckles, razor, gasoline, matov (sic) cocktail.

(R.p. 153).



14

It is true that on October 12, 2009, the South Carolina Supreme Court held that "a jury charge instructing that malice may be inferred from the use of a deadly weapon is no longer good law in South Carolina where evidence is presented that would reduce, mitigate, excuse or justify the homicide." State v. Belcher, 685 S.E.2d at 804. However, the Supreme Court noted that Belcher "represent[ed] a clear break from our modern precedent" of approving of the jury charge on inference of malice from use of a deadly weapon, expressly overruling some twenty-six (26) cases decided over the course of more than 100 years, ranging in date from 1894 to 2006. Belcher, 685 S.E.2d at 810. Petitioner was tried on July 18-19, 2005, more than four years before the ruling in Belcher on October 12, 2009. Hence, the charge given in Petitioner's case was, at the time of his trial, the sanctioned charge on the law, and the Court's jury instructions reflected the same. Because the Belcher decision posed a clear break from long-established precedent some four years after Petitioner's trial, Petitioner's counsel was not unreasonable in failing to make this objection. Gilmore v. State, 445 S.E.2d 454 (S.C. 1994)[attorney is not required to be clairvoyant or anticipate changes in the law which were not in existence at time of trial], overruled on other grounds by Brightman v. State, 520 S.E.2d 614 (S.C. 1999)). Furthermore, the Belcher decision expressly stated that its holding would not apply to convictions challenged on post-conviction relief. Belcher, 685 S.E.2d at 810-811.

Finally, even if Belcher had been applicable to Petitioner's case (which it was not), evidence that would reduce, mitigate, excuse or justify the homicide was not presented. There were numerous eye witnesses who testified, the testimony in evidence reflected that the victim was seated in a chair watching television with his back to the Petitioner at the time Petitioner committed the homicide, and there was absolutely no evidence of self-defense presented. (R.pp. 46-47, 50-51, 55, 72, 78-79, 88, 90, 95, 101, 127-128). Further, witness Paul Smalls testified that after the shooting



Petitioner told him that "he burned him", referring the victim, and that "he been, like, he never regret what he did." (R.pp. 127-128). Petitioner's trial counsel also testified at the PCR hearing that they considered a self defense theory, but that it was "very unlikely" based on the facts. (R.pp. 258, 265). So there was evidence of both express and implied malice with regard to the victim. Therefore, Petitioner has not carried his burden of showing that his counsel was ineffective for failing to object to the jury instruction. Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

Since Petitioner has not shown that he is entitled to relief on these claims, they should be dismissed.

## II.

With respect to Petitioner's Grounds Two, Three, and Four, Petitioner asserts ineffective assistance of counsel due to counsel's failure to obtain an expert as to the purported GSR, to object to the introduction to the jury of a firearm that was displayed but not admitted into evidence nor established as to its relevancy, and to object to the introduction of a bullet which had been removed from the victim without ballistic confirmation or testing. However, it is readily apparent that these issues were not previously properly raised and exhausted by Petitioner in his state court proceedings. Petitioner failed to raise these issues in his PCR petition or in any of his amendments to his PCR petition, and the PCR court's order did not address these issues. Petitioner also did not address these issues in his motion to reconsider the PCR court's order, nor did he raise them in his PCR appeal.

Accordingly, these issues were not properly preserved for review by this Court in Petitioner's APCR proceedings. See White v. Burtt, No. 06-906, 2007 WL 709001 at *1 & *8



(D.S.C. Mar. 5, 2007)(citing Pruitt v. State, 423 S.E.2d 127, 127-128 (S.C. 1992)[issue must be raised to and ruled on by the PCR judge in order to be preserved for review]); cf. Cudd v. Ozmint, No. 08-2421, 2009 WL 3157305 at * 3 (D.S.C. Sept. 25, 2009)[Finding that where Petitioner attempted to raise an issue in his PCR appeal, the issue was procedurally barred where the PCR court had not ruled on the issue and Petitioner's motion to alter or amend did not include any request for a ruling in regard to the issue]; State v. Dunbar, 587 S.E.2d at 693-694 ["In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge. Issues not raised and ruled upon in the trial court will not be considered on appeal."]; Miller v. Padula, No. 07-3149, 2008 WL 1826495 at **1-2 & **9-10 (D.S.C. Apr. 23, 2008); Sullivan v. Padula, No. 11-2045, 2013 WL 876689 at * 6 (D.S.C. Mar. 8, 2013)[Argument not raised in PCR appeal is procedurally barred]; see also Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n.3 (1971)[Discussing lower court's finding that failure to appeal denial of his state post-conviction petition constituted non-exhaustion of remedies]; Wicker v. State, 425 S.E.2d 25, 26 (S.C. 1992).

Since Petitioner did not pursue these claims in his post conviction relief proceedings, they are barred from further state collateral review; Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n. 3 (1971); Wicker v. State, 425 S.E.2d 25 (S.C. 1992); Ingram v. State of S.C., No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); Josey v. Rushton, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); Aice v. State, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there are no current state remedies for Petitioner to pursue these issues, they are fully exhausted. Coleman v. Thompson, 501 U.S. 722, 735, n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-298 (1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that



the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."], cert. denied, 117 S.Ct. 854 (1997); Aice, 409 S.E.2d at 393; Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state...or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court."], cert. denied, 522 U.S. 833 (1997); Ingram, 1998 WL 726757 at **1.

However, even though otherwise exhausted, because these issues were not *properly* pursued and exhausted by the Petitioner in the state court, federal habeas review of these claims is now precluded absent a showing of cause and prejudice, or actual innocence. Martinez v. Ryan, 565 U.S. ___, ___, 132 S.Ct. 1309, 1316 (2012); Wainwright v. Sykes, 433 U.S. 72 (1977); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989), cert. denied, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.

In an apparent attempt to establish cause for his default, Petitioner argues in his memorandum in opposition that, to the extent his claims are procedurally defaulted, he should still be allowed to pursue them because any default is due to ineffective assistance of his PCR counsel. However, Petitioner has failed to establish entitlement to relief based on this argument.

The United States Supreme Court has held that "if the procedural default is the result



of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State . . . Ineffective assistance of counsel, then, is cause for procedural default." Murray, 477 U.S. at 488; see also Coleman v. Thompson, supra; McCleskey v. Zant, 499 U.S. 467, 494 (1991); Noble v. Barnett, 24 F.3d 582, 586, n.4 (4th Cir. 1994)["[C]onstitutionally ineffective assistance of counsel is cause per se in the procedural default context"]; Smith v. Dixon, 14 F.3d 956, 973 (4th Cir. 1994)(en banc).  Even so, while ineffective assistance of counsel can constitute "cause" for a procedural default, it will only constitute "cause" if it amounts to an independent violation; Ortiz v. Stewart, 149 F.3d 923, 932 (9th Cir. 1998); Bonin v. Calderon, 77 F.3d 1155, 1159 (9th Cir. 1996); and ineffective assistance of PCR counsel (as opposed to trial or direct appeal counsel) does not amount to an independent constitutional violation, and ordinarily would not therefore constitute "cause" for a procedural default.  Murray v. Giarratano, 492 U.S. 1-7, 13 (1989) [O'Connor, J., concurring] [ "[T]here is nothing in the Constitution or the precedents of [the Supreme] Court that requires a State provide counsel in postconviction proceedings.  A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment.  Nothing in the Constitution requires the State to provide such proceedings,...nor does...the Constitution require [ ] the States to follow any particular federal model in those proceedings."]; Mackall v. Angelone, 131 F.3d 442, 447-449 (4th Cir. 1997); Ortiz, 149 F.3d at 932; Pollard v. Delo, 28 F.3d 887, 888 (8th Cir. 1994); Lamp v. State of Iowa, 122 F.3d 1100, 1104-1105 (8th Cir. 1997); Parkhurst v. Shillinger, 128 F.3d 1366, 1371 (10th Cir. 1997); Williams v. Chrans, 945 F.2d 926, 932 (7th Cir. 1992); Gilliam v. Simms, No. 97-14, 1998 WL 17041 at *6 (4th Cir. Jan. 13, 1998).

However, in Martinez the Supreme Court carved out a "narrow exception" that



19

modified

"the unqualified statement in <u>Coleman</u> that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." <u>Martinez</u>, 566 U.S. at __, 132 S.Ct. at 1315. [F]or three reasons.  First, the "right to the effective assistance of counsel at trial is a bedrock principle in our justice system . . . . Indeed, the right to counsel is the foundation for our adversary system." <u>Id</u>. at ___, 132 S.Ct. at 1317.

Second, ineffective assistance of counsel on *direct appellate review* could amount to "cause", excusing a defendant's failure to raise (and thus procedurally defaulting) a constitutional claim.  <u>Id</u>. at ___, 132 S.Ct. at 1316, 1317.  But States often have good reasons for initially reviewing claims of ineffective assistance of trial counsel during state collateral proceedings rather than on direct appellate review.  <u>Id</u>. at ___, 132 S.Ct. at 1317-1318.  That is because review of such a claim normally requires a different attorney, because it often "depend[s] on evidence outside the trial record," and because efforts to expand the record on direct appeal may run afoul of "[a]bbreviated deadlines," depriving the new attorney of "adequate time . . . to investigate the ineffective-assistance claim."  <u>Id</u>. at ___, 132 S.Ct. at 1318.

Third, where the State consequently channels initial review of this constitutional claim to collateral proceedings, a lawyer's failure to raise an ineffective assistance of counsel claim during initial-review collateral proceedings, could (were <u>Coleman</u> read broadly) deprive a defendant of any review of that claim at all.  <u>Martinez</u>, <u>supr  a</u> at ___, 132 S.Ct. at 1316.

We consequently read <u>Coleman</u> as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."  <u>Martinez</u>, <u>supra</u> at ___, 132 S.Ct. at 1318-1319, 1320-1321.

<u>Trevino v. Thaler</u>, 133 S.Ct. 1911, 1917-1918 (2013); <u>see</u> <u>also</u> <u>Gray v. Pearson</u>, 526 Fed. Appx. 331, 333 (4th Cir. June 7, 2013)["The Supreme Court had previously held in <u>Coleman</u> that because a habeas petitioner has no constitutional right to counsel in state post-conviction proceedings, the ineffectiveness of post-conviction counsel *cannot* establish 'cause' to excuse a procedural default.



Coleman, 501 U.S. at 757. The Court established an exception to that rule in Martinez."] Therefore, because, under South Carolina law, a claim of ineffective assistance of trial counsel is raised in an APCR; cf. State v. Felder, 351 S.E.2d 852 (S.C. 1986); Bryant v. Reynolds, No. 12-1731, 2013 WL 4511242, at * 19 (D.S.C. Aug. 23, 2013); Gray, 2013 WL 2451083, at * 4, fn *; Petitioner's claim of ineffective assistance of PCR counsel as "cause" for his default has been considered hereinbelow under the revised standard of Martinez and Trevino with regard to Grounds Two, Three, and Four.

Under the first requirement of the Martinez exception, the Petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit." Gray, 2013 WL 2451083 at * 2. Therefore, Petitioner must show that there is a reasonable probability that he would have received relief on his claims of ineffective assistance of trial counsel in his APCR if they had been raised. Secondly, Petitioner must then show that his PCR counsel's representation was objectively unreasonable during his post-conviction proceeding for not raising these claims. Ford v. McCall, No. 12-2266, 2013 WL 4434389 at *11 (D.S.C. Aug. 14, 2013)(citing Horonzy v. Smith, No. 11-234, 2013 WL 3776372 at * 6 (D.Idaho Sept. 12, 2012)["The application of the Strickland test in this instance means that Petitioner is required to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter. This standard is a high one."]. For the reasons set forth hereinbelow, Petitioner has failed to show entitlement to relief under this standard.

### (Ground Two)

In Ground Two, Petitioner contends that his counsel was ineffective due to his failure



to obtain an expert as to the purported GSR. However, defense counsel specifically argued the State's

failure to produce any evidence of gunshot residue in his closing argument to the jury; (R.pp. 146-

147); and Petitioner has produced no expert witnesses or evidence in either his PCR proceedings or

as part of this federal habeas petition to support his assertions of what evidence he could have used

at trial if an expert had been called. Bassette v. Thompson, 915 F.2d 932, 939, 941 (4th Cir.1990),

cert. denied, 499 U.S. 982 (1991); cf. Bannister v. State, 509 S.E.2d 807, 809 (S.C.1998) ["This

Court has repeatedly held a PCR applicant *must* produce the testimony of a favorable witness *or*

*otherwise offer the testimony in accordance with the rules of evidence* at the PCR hearing in order

to establish prejudice from the witness' failure to testify at trial."]; Lorenzen v. State, 657 S.E.2d 771,

776-777 (S.C. 2008)[Finding that Defendant's contention that expert testimony would have helped

his case was merely speculative where he called no expert to testify]; Dempsey v. State, 610 S.E.2d

812, 814 (S.C. 2005)[concluding that a finding of prejudice is merely speculative where a PCR

applicant fails to have an expert testify at the PCR hearing]; Underwood v. State, 425 S.E.2d 20, 22

(S.C. 1992)[prejudice from trial counsel's failure to interview or call witnesses cannot be shown

where the witnesses do not testify at post-conviction relief]; Kibler v. State, 227 S.E.2d 199, 202

(S.C. 1976)[the Court will not speculate concerning what might have occurred if counsel had

conducted further investigation]; Glover v. State, 458 S.E.2d 539, 540 (S.C.1995)["[B]ecause the

other witnesses respondent claimed could have provided an alibi defense did not testify at the PCR

hearing, respondent could not establish any prejudice from counsel's failure to contact these

witnesses."]; Clark v. State, 434 S.E.2d 266, 267–268 (S.C.1993) [pure conjecture as to what a

witness' testimony would have been is not sufficient to show a reasonable probability the result at trial

would have been different]; Underwood v. State, 425 S.E.2d 20, 22 (S.C.1992) [prejudice from trial



counsel's failure to interview or call witnesses could not be shown where witnesses did not testify at PCR hearing].

       While Petitioner may argue that this testimony or evidence was not presented at his PCR hearing because of his PCR counsel's ineffectiveness, he has also offered no such evidence now as part of this federal petition. Accordingly, Petitioner has failed to show deficient performance or prejudice on counsel's part for failure to retain or call a GSR expert. <u>Smith</u>, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. Therefore, Petitioner has failed to show that his trial counsel was ineffective on this basis, and by failing to show any substantial ineffective assistance of counsel claim, Petitioner has failed to show cause for his procedural default on this issue. As such, Ground Two of the Petition is procedurally barred from consideration by this Court. <u>Rodriguez</u>, 906 F.2d at 1159.

### (Ground Three)

       In Ground Three, Petitioner contends his trial counsel was ineffective for failing to object to the introduction to the jury of a firearm that was displayed but not admitted into evidence nor established as to its relevancy. This claim is a little unusual because Petitioner admits that the record does not reflect that a firearm was displayed [<u>see</u> Petitioner's Affidavit, ¶ 9, Court Docket No. 36-1, p. 5], but contends that it was nevertheless presented as the "tool" that cause the death of the victim. <u>See</u> Petitioner's Affidavit, ¶ 9, Court Docket No. 36-1, p. 6. Petitioner attached a letter from his trial counsel dated September 29, 2006, where counsel is apparently responding to Petitioner's inquiry as to why the Solicitor presented a weapon if it was not the murder weapon. <u>See</u> Petitioner's Affidavit, Attachments A-B, Court Docket No. 36-2. Trial counsel responds "I believe that the weapon that Mr. Knight presented during the course of your trial was the weapon of your cousin, the

23



deceased, found outside the home. I hope this is of some help to you." See Petitioner's Affidavit, Attachment B, Court Docket No. 36-2. Petitioner's sister has also submitted an affidavit in which she attests that the Solicitor displayed a handgun to the jury and said that it was the one found at the murder scene, although it was not entered into evidence. See Elisa Bernadet's Affidavit, Court Docket No. 37-1. However, Petitioner has failed to cite to anywhere in the record where the Solicitor brandished a firearm before the jury, and a review of the transcript is devoid of any such event.

The record reflects that Elijah Smalls testified he saw Petitioner pull out a gun and shoot the victim and that Petitioner then threw the gun in the hall after he shot the victim. (R.pp. 46-47, 52-53). Smalls testified that the victim ran out the back door after being shot. (R.pp. 49, 65-66). Smalls also testified that after Petitioner shot the victim, that he [Smalls] asked Jessie Pope, his nephew, to come get the gun out of his house. (R.pp. 50, 61). Smalls and Pope both testified that Pope took the gun and threw it in a trash bin behind his house. (R.pp. 50, 68). Smalls and Pope also testified that a second gun was found behind Smalls' house but that they didn't know who it belonged to. (R.pp. 53, 70). However, Smalls and Pope both testified that Pope also threw that gun into the outside trash bin. (R.pp. 59, 68). Smalls then testified that Petitioner later came back to retrieve the gun, asked where it was, got the gun from outside and took it, but did not take the second gun. (R.pp. 47, 62). No gun was introduced, however, and Petitioner's counsel argued in his closing that "We have absolutely no evidence, none whatsoever in the way of physical evidence to show that - - what he was shot with. We know there were guns because supposedly, according to Elijah Smalls there were guns all over the place. Guns in the backyard, guns in the house. Not one fingerprint and not one iota of nothing." (R.p. 146). Petitioner's counsel also argued that "[t]hey didn't find a weapon in the house did they? We don't know. We don't know what the other weapon was. Whose



24

fingerprints were on those weapons?  Were there any weapons?"  (R.pp. 147-148).

Therefore, the record shows that although there was testimony about two weapons being at the house or the surrounding area where the murder occurred, there was no evidence or testimony establishing that any specific weapon was used in the crime.  Hence, even assuming arguendo that somehow a weapon was displayed at the trial which was not admitted into evidence and is not referenced in the transcript, Petitioner has not shown any prejudice from his counsel's failure to object.  Rather, the record reflects that counsel vehemently argued that no evidence established that a weapon was in the house, that no fingerprints were found on any of the alleged weapons, and he even questioned "[w]ere there any weapons?"  Accordingly, Petitioner has failed to show his counsel was ineffective or any resulting prejudice, and by failing to show any substantial ineffective assistance of counsel claim, Petitioner has failed to show cause for his procedural default on this issue.  Accordingly, Ground Three is procedurally barred from consideration by this Court. Rodriguez, 906 F.2d at 1159.

### (Ground Four)

In Ground Four, Petitioner contends his counsel was ineffective for failing to object to the introduction of a bullet which had been removed from the victim without ballistic confirmation or testing.  See Petition, p. 11.  However, although the parties discuss this issue as if the bullet itself was admitted into evidence, the trial exhibit list does not list the bullet as an exhibit, and it is not clear from the record that the bullet was ever actually admitted into evidence.  See generally (R.pp. 3, 40, 46-49).  At the trial, Cynthia Schandl, a forensic pathologist, testified that the victim was shot once in the back, that they retrieved a bullet, and that the bullet was turned over to law enforcement. (R.pp. 106-108).  Jason Sweeney testified that he worked at the Beaufort County Sheriff's



Department on November 9, 2004, and that he collected a projectile that was removed from the decedent and was sure that he turned that over with other evidence given to John Kehoe on the same day. (R.pp. 37, 40). Therefore, this bullet was evidence of the crime of murder and the proximate cause of the victim's death. (R.pp. 40, 46-47, 107-112). Petitioner has not shown any basis for his trial counsel to have objected to the testimony regarding the bullet, whether admitted or not. See Hough v. Anderson, 272 F.3d 878, 898-890 (7th Cir. 2001)[claims of ineffective assistance of counsel for failure to object are tied to the admissibility of the underlying evidence; if the evidence was admissible in any event, then the failure to object could not be deficient or prejudicial under Strickland].

Petitioner's only argument in his Petition regarding the bullet is that his trial counsel should have objected because the bullet had not been linked to any weapons that were discovered. However, even if the bullet itself had been admitted, this would not have been a basis for objecting to the admission of the bullet, because the testimony was that it was the cause of the victim's death. Any arguments regarding it not being linked to a specific weapon would be an arguable point for trying to show that perhaps it did not come from a gun linked to the Petitioner, but that is not a basis for keeping the bullet itself from being admitted into evidence. In any event, Petitioner produced no expert witnesses or other evidence or testimony in either his PCR proceedings or as part of this federal petition to support his arguments for why evidence of this bullet should not have been admitted. Bassette, 915 F.2d at 941; cf. Bannister, 509 S.E.2d at 809 ["This Court has repeatedly held a PCR applicant *must* produce the testimony of a favorable witness *or otherwise offer the testimony in accordance with the rules of evidence* at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial."]; Lorenzen, 657 S.E.2d at 776-777 [Finding that



Defendant's contention that expert testimony would have helped his case was merely speculative where he called no expert to testify]; <u>Dempsey</u>, 610 S.E.2d at 814 [concluding that a finding of prejudice is merely speculative where a PCR applicant fails to have an expert testify at the PCR hearing]; <u>Kibler</u>, 227 S.E.2d at 202 [the Court will not speculate concerning what might have occurred if counsel had conduct further investigation]; <u>Clark</u>, 434 S.E.2d at 267–268 [pure conjecture as to what a witness' testimony would have been is not sufficient to show a reasonable probability the result at trial would have been different]. Nor has Petitioner offered any such testing or evidence now.

Accordingly, Petitioner has failed to show deficient performance or prejudice on trial counsel's part for failing to object to testimony and/or evidence regarding the bullet, and by failing to show any substantial ineffective assistance of counsel claim, Petitioner has failed to show cause for his procedural default on this issue. <u>Smith</u>, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. Accordingly, Ground Four is procedurally barred from consideration by this Court. <u>Rodriguez</u>, 906 F.2d at 1159.

### III.

Finally, to the extent Petitioner is arguing that he is actually innocent, cognizable claims of "actual innocence" are extremely rare and must be based on "factual innocence not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998); <u>see</u> <u>also</u> <u>Doe v. Menefee</u>, 391 F.3d 147 (2d Cir. 2004). Petitioner has failed to present any new, reliable evidence of any type that was not presented in any of his prior court proceedings which supports his innocence on the criminal charges on which he was found guilty. See <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995)[to present a credible claim of actual innocence, a petitioner must "support his allegations of



constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."]; <u>Doe</u>, 391 F.3d at 161 (quoting <u>Schlup</u> for the evidentiary standard required for a court to consider an actual innocence claim).  Further, Petitioner has also failed to make any showing that a fundamental miscarriage of justice will occur if any of his defaulted claims are not considered.  <u>Wainwright v. Sykes</u>, <u>supra</u>; <u>Murray v. Carrier</u>, 477 U.S. 478 (1986); <u>Rodriguez</u>, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing <u>Murray v. Carrier</u>, 477 U.S. at 496); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 348 (1992); <u>Bolender v. Singletary</u>, 898 F.Supp. 876, 881 (S.D.Fla. 1995).

Therefore, Grounds Two, Three, and Four are procedurally barred from consideration by this Court, and must be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 10, 2015
Charleston, South Carolina



28

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

